IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **NATIONAL ELECTRICAL BENEFIT FUND** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | Civil Action No. PWG-14-184 |
| ) | |
| **REGAN ELECTRIC COMPANY, INC.** ) | |
| ) | |
| **Defendant.** ) | |
| ) | |

### REPORT AND RECOMMENDATION

This Report and Recommendation addresses Plaintiff National Electrical Benefit Fund (the "NEBF")'s Motion for Default Judgment. ECF No. 6.[1] Defendant Regan Electric Company Inc. (the "RECI") has not filed a response and the deadline for the response elapsed on March 17, 2014. *See* Loc. R. 105.2.a. Having reviewed the filings, no hearing is deemed necessary. *See* Loc. R. 105.6. For the reasons stated herein, the undersigned recommends that, following the time to object to this Report and Recommendation, Plaintiff's Motion for Default Judgment be GRANTED.

**I.    FACTUAL AND PROCEDURAL HISTORY**

Plaintiff, the NEBF, is "a multiemployer employee pension benefit plan within the meaning of Section 3(2) of [the Employee Retirement Income Security Act of 1974, as amended (hereinafter "ERISA")], 29 U.S.C. § 1002(2), that has been established pursuant to an agreement entered into between the International Brotherhood of Electrical Workers ("IBEW") and the National Electrical Contractors Association[.]" ECF No. 1 ¶ 4. Plaintiffs Salvatore J. Chilia and

---

[1] On April 16, 2014, pursuant to 28 U.S.C. § 636 and Local Rules 301 and 302, Judge Grimm referred this case to the undersigned to review Plaintiff's Motion for Default Judgment and/or make recommendation concerning damages. ECF No. 9.

D.R. Borden, Jr. are the Trustees to the NEBF pursuant to Section 403 of ERISA, 29 U.S.C. § 1103 and, thereby are fiduciaries to the NEBF pursuant to Section 3(21)(A) of ERISA, 29 U.S.C. § 1002(21)(A).  ECF No. 1 ¶ 5.  Defendant, the RECI, is "an employer engaged in an industry affecting commerce, is contractually and legally obligated to submit contributions to the NEBF, and is an employer within the meaning of Section 3(5) of ERISA, 29 U.S.C. § 1002(5)."  ECF No. 1 ¶ 6.

On January 24, 2014 Plaintiff filed a Complaint.  Plaintiff alleges "Defendant is a signatory, and has been a signatory continuously during all relevant periods, to collective bargaining agreements (the "Collective Bargaining Agreements") with IBEW Local Unions 134 and 150 as the collective bargaining representatives of Defendant's employees."  ECF No. 1 ¶ 7. Pursuant to these Collective Bargaining Agreements ("CBAs"), Defendant "has been and is also bound to all terms and conditions of the Restated Employees Benefit Agreement and Trust for the National Electrical Benefit Fund . . . which has governed the administration of the NEBF at all times relevant to this action."  *Id.* ¶ 8.  As alleged by Plaintiff, despite Defendant's obligations, "Defendant has been delinquent in making contributions to the NEBF on behalf of its employees covered by the Collective Bargaining Agreements for the periods of November 2012 through November 2013."  *Id.* ¶ 10.

Plaintiff further alleges, based on a review of its own records, "Defendant failed to pay the NEBF at least $9,353.78 in contributions for the periods of November 2012 through November 2013 . . . Additional amounts may be owed for this time period, but the NEBF cannot determine the total amount because Defendant failed to submit all of its required payroll reporting forms."  *Id.* ¶ 11.  Additionally, as of the date of the Complaint, Defendant owes Plaintiff interest in the amount of $667.46 and liquidated damages in the amount of $1,870.76.

*Id.* ¶¶ 12-13. Moreover Plaintiff seeks to recover all costs incurred to recover the delinquent contributions including reasonable attorneys' fees and costs.

This Court's jurisdiction is based on Section 502(e) of ERISA, 29 U.S.C. § 1132(e)[2] and therefore is based on a federal question. *See* 28 U.S.C. § 1331.[3] Venue is proper in this judicial district because the NEBF is administered in Rockville, Maryland which is located in this district. 29 U.S.C. § 1132(e)(2).

Defendant was served a "Summons in a Civil Action" on January 29, 2014, *see* ECF No. 4, such that Defendant's Answer was due February 19, 2014. *See id.*; Fed. R. Civ. P. 12(a)(1)(A)(i). Defendant has not filed an Answer or otherwise responded to the Complaint. On February 28, 2014 Plaintiff moved for Clerk's Entry of Default for want of answer or other defense against Defendant. *See* ECF No. 5. That same day Plaintiff also moved for a default judgment against Defendant. *See* ECF No. 6. On March 26, 2014 the Clerk of Court entered an Order of Default against Defendant. *See* ECF No. 7. On April 16, 2014 Judge Grimm referred the case to the undersigned for a Report and Recommendation on Plaintiff's Motion for Default Judgment. *See* ECF No. 9.

In April 2001 and October 2002 Defendant signed Letters of Assent ("LOA") with the IBEW Local Union 150. ECF No. 6-3 at 3-4. In March 2011 Defendant signed a LOA with the IBEW Local Union 134. *Id.* at 2. These LOAs bound Defendant to the then existing and any

---

[2] '(1) Except for actions under section (a)(1)(B) of this section, the district courts of the United States shall have exclusive jurisdiction of civil actions under this subchapter brought by the Secretary or by a participant, beneficiary, fiduciary, or any person referred to in section 1021(f)(1) of this title. State courts of competent jurisdiction and district courts of the United States shall have concurrent jurisdiction of actions under paragraphs (1)(B) and (7) of subsection (a) of this section.
  (2) Where an action under this subchapter is brought in a district court of the United States, it may be brought in the district where the plan is administered, where the breach took place, or where a defendant resides or may be found, and process may be served in any other district where a defendant resides or may be found."

[3] The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.

subsequently approved labor agreements between the IBEW Local Unions 134 and 150 and two different chapters[4] of the National Electrical Contractors Association ("NECA"). *See id.* at 2-4.

A section of the NEBF provisions summarizes the obligation of employers such as Defendant RECI subject to the CBAs.

> It is agreed that in accord with the Employees Benefit Agreement of the National Electrical Benefit Fund ("NEBF"), as entered into between the National Electrical Contractors Association and the International Brotherhood of Electrical Workers on September 3, 1946, as amended, and now delineated as the Restated Employees Benefit Agreement and Trust, that unless authorized otherwise by the NEBF the individual Employer will forward monthly to the NEBF's designated local collection agent an amount equal to 3% of the gross monthly labor payroll paid to, or accrued by, the employees in this bargaining unit, and a completed payroll report prescribed by the NEBF. The payment shall be made by check or draft and shall constitute a debt due and owing to the NEBF on the last day of each calendar month, which may be recovered by suit initiated by the NEBF or its assignee. The payment and the payroll report shall be mailed to reach the office of the appropriate local collection agent not later than fifteen (15) calendar days following the end of each calendar month.
>
> The individual Employer hereby accepts, and agrees to be bound by, the Restated Employee[]s Benefit Agreement and Trust.

ECF No. 6-4 at 2.

Article 6 of the Restated Employees Benefit Agreement and Trust for the National Electrical Benefit Fund ("Restated Employees Benefit Agreement") addresses "Contributions and Collections." The Restated Employees Benefit Agreement empowers the Trustees to demand, collect and receive Covered Employer payments as well as all other money and property to which the Trustees may be entitled. *See* Section 6.8 (ECF No. 6-5 at 8). Collection Costs are delineated in Section 6.9.

---

[4] Electrical Contractors Association City of Chicago, Inc., NECA [ECF No. 6-3 at 2] and Lake County Division, Northeastern Illinois Chapter, NECA, Inc. [ECF No. 6-3 at 3, ECF No. 6-3 at 4].

>  **Collection Costs.**  In the event a Covered Employer has failed or fails to make required contributions, the Trustees are authorized and empowered:
>
>  **6.9.1**  to impose on and receive from such Covered Employer all costs of any audit;
>
>  **6.9.2**  to assess and receive from such Covered Employer as liquidated damages an amount up to twenty percent (20%) of the amount found to be delinquent, in that the failure of the Covered Employer to make the required payment of contributions imposes additional burden and expense upon the Trustees in the collection thereof, in the administration of the NEBF, including but not limited to the communication with said Covered Employer, and, in addition thereto may cause a loss of benefits to Covered Employees, all of which are difficult of accurate ascertainment;
>
>  **6.9.3**  to assess and receive from such Covered Employer the lost interest from the delinquent amounts, to be calculated at a ten percent (10%) annual rate compounded monthly throughout the period of delinquency;
>
>  \*                                          \*                                          \*
>
>  **6.9.5**  to impose on and receive from such Covered Employer all costs, audit expenses, actuarial expenses, and attorneys['] fees incurred by the Trustees in enforcing the provisions hereof, whether by litigation or otherwise[.]

ECF No. 6-5 at 8-9.

## II.  DISCUSSION

Federal Rule of Civil Procedure 55(b) governs the entry of default judgments.  Pursuant to Rule 55(b), the clerk may enter a default judgment "[i]f the plaintiff's claim is for a sum certain or a sum that can be made certain by computation," and the defendant is in default for failing to appear and is "neither a minor nor an incompetent person."  Fed. R. Civ. P. 55(b)(1).

The entry of default judgment is a matter within the discretion of the Court.  *SEC v. Lawbaugh*, 359 F. Supp. 2d 418, 421 (D. Md. 2005) (citing *Dow v. Jones*, 232 F. Supp. 2d 491,

494 (D. Md. 2002)). As the Court noted in *Disney Enterprises, Inc. v. Delane*, 446 F. Supp. 2d 402 (D. Md. 2006), "[t]he United States Court of Appeals for the Fourth Circuit has a 'strong policy that cases be decided on the merits.'" *Id.* at 405 (quoting *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 453 (4th Cir. 1993)). Nonetheless, "default judgment is available when the 'adversary process has been halted because of an essentially unresponsive party.'" *Id.* (quoting *Lawbaugh*, 359 F. Supp. 2d at 421).

In determining whether to award a default judgment, the Court takes as true the well-pleaded factual allegations in the complaint, other than those pertaining to damages. *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001) ("The defendant, by his default, admits the plaintiff's well-pleaded allegations of fact, is concluded on those facts by the judgment, and is barred from contesting on appeal the facts thus established." (citation and internal quotation marks omitted)); *see* Fed. R. Civ. P. 8(b)(6) ("An allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied."). It remains, however, "for the court to determine whether these unchallenged factual allegations constitute a legitimate cause of action." *Agora Fin., LLC v. Samler*, 725 F. Supp. 2d 491, 494 (D. Md. 2010); 10A Charles Alan Wright et al., *Fed. Prac. and Proc. Civ.* § 2688 (3d ed. 1998) ("[L]iability is not deemed established simply because of the default . . . and the court, in its discretion, may require some proof of the facts that must be established in order to determine liability."); *id.* (explaining that the court must "consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law").

If the Court finds that "liability is established, [it] must then determine the appropriate amount of damages." *Samler*, 725 F. Supp. 2d at 494 (citing *Ryan*, 253 F.3d at 780-81). This is

so because "an allegation 'relating to the amount of damages' is not deemed admitted based on a defendant's failure to deny in a required responsive pleading." *Hartford Fin. Servs. Grp. Inc. v. Carl J. Meil, Jr., Inc.*, No. WDQ-10-2720, 2011 WL 1743177, at *7 (D. Md. May 5, 2011) (quoting Fed. R. Civ. P. 8(b)(6)); *Trs. of the Elec. Welfare Trust Fund v. MH Passa Elec. Contracting, LLC*, No. DKC-08-2805, 2009 WL 2982951, at *1 (D. Md. Sept. 14, 2009) ("Upon default, the well-pled allegations in a complaint as to liability are taken as true, although the allegations as to damages are not."); *Int'l Painters & Allied Trades Indus. Pension Fund v. Metro Glass & Mirror, Inc.*, No. ELH-11-2389, 2012 WL 893262, at *2 (D. Md. Mar. 14, 2012) ("The court does not accept factual allegations regarding damages as true, but rather must make an independent determination regarding such allegations.")

In sum, the Court must make two determinations. First, the Court must decide "whether the unchallenged facts in plaintiff['s] complaint constitute a legitimate cause of action[.]" *Samler*, 725 F. Supp. 2d at 494. Second, if the Court finds that liability is established, it must "make an independent determination regarding the appropriate amount of damages." *Id.*

A. **Liability**

Approximately four months have passed since Defendant was served with the Complaint, yet Defendant has not pleaded or otherwise asserted a defense by filing an Answer. As a result, all of the factual allegations made in Plaintiff's Complaint not pertaining to damages are deemed admitted. Fed. R. Civ. P. 8(b)(6); *Ryan*, 253 F.3d at 780. Plaintiff moved for a default judgment on February 28, 2014, and Defendant has not responded. It is within the Court's discretion to grant default judgment when a defendant is unresponsive. *See Park Corp. v. Lexington Ins. Co.*, 812 F.2d 894, 897 (4th Cir. 1987) (upholding a default judgment awarded where the defendant lost its summons and did not respond within the proper period); *Disney Enterprises*, 446 F. Supp.

2d at 405-06 (finding appropriate the entry of default judgment where the defendant had been properly served with the complaint and did not respond, despite repeated attempts to contact him). Accordingly, the Court should grant default judgment on this Complaint if Plaintiff has established Defendant's liability.

Under 29 U.S.C. § 1145 (Delinquent contributions), Defendant RECI is obligated to make contributions to the NEBF in accordance with the terms and conditions of the CBAs. When an employer such as the RECI fails to make the obligated contributions, a fiduciary of a multiemployer plan, in this case Salvatore J. Chilia and D.R. Borden, Jr. on behalf of NEBF, may enforce the provisions of ERISA and the terms of the CBAs through a civil action. *See* 29 U.S.C. § 1132(a)(3).[5] If a court enters judgment in favor of the multiemployer plan in an action brought by the plan's fiduciary seeking to recover delinquent contributions from a defendant employer pursuant to 29 U.S.C. § 1145, the court shall award the plan—

> (A) the unpaid contributions,
>
> (B) interest on the unpaid contributions,
>
> (C) an amount equal to the greater of—
>
>> (i) interest on the unpaid contributions, or
>>
>> (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),
>
> (D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and
>
> (E) such other legal or equitable relief as the court deems appropriate.

---

[5] "A civil action may be brought—by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan[.]"

29 U.S.C. § 1132(g)(2). Additionally, pursuant to the Restated Employees Benefit Agreement, the Trustees are authorized to take all necessary actions to recover delinquent contributions. Further, the Restated Employees Benefit Agreement "authorizes the Trustees to recover interest on the delinquent contributions at a rate of ten percent (10%) per annum, liquidated damages in an amount equal to twenty percent (20%) of the delinquency, and all costs, including attorneys' fees, incurred in collecting the delinquency." ECF No. 1 ¶ 9; *see* ECF No. 6-5 at 8-9 (Restated Employees Benefit Agreement §§ 6.9.1 - 6.9.3, 6.9.5).

That, accepting as true Plaintiff's well-pleaded allegations (with supporting documentation provided via the motion for default judgment and affidavit of Lauren Loughran, Director, Audit and Delinquencies, NEBF), the undersigned finds Plaintiff has proven,

> (a) Defendant is a signatory to the CBAs with IBEW Local Unions 134 and 150;
>
> (b) the NEBF is the multiemployer employee pension benefit plan established pursuant to an agreement between the IBEW and the NECA;
>
> (c) the NEBF is a multiemployer plan within the meaning of 29 U.S.C. § 1002(2);
>
> (d) in accordance with the CBAs, Defendant is obligated to submit contributions to the NEBF on behalf of employees covered by the CBAs;
>
> (e) pursuant to the CBAs, Defendant is bound to all terms and conditions of the Restated Employees Benefit Agreement which governs the administration of the NEBF;
>
> (f) based on an audit of Defendant's monthly payroll reports prepared and submitted to the NEBF, Defendant underpaid the NEBF pension fund contributions owed by a total of $9,353.78 for the months of November 2012 to November 2013;
>
> (g) "Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not

>    inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement." 29 U.S.C. § 1145; and
>
>    (h) Defendant has violated 29 U.S.C. § 1145 since it has failed to make contributions to the NEBF in accordance with the CBAs and the Restated Employees Benefit Agreement.

Accordingly, Plaintiff has established Defendant's liability under ERISA and the Restated Employees Benefit Agreement, and therefore a default judgment as to the "Statement of Claim" outlined in Plaintiff's Complaint is proper.

**B.     Damages**

In this ERISA case Plaintiff is entitled to damages as outlined in 29 U.S.C. § 1132(g)(2). Plaintiff has submitted an affidavit of Lauren Loughran, Director, Audit and Delinquencies for the NEBF, in support of Plaintiff's request for unpaid contributions, interest and liquidated damages. *See* ECF No. 6-2. Plaintiff has also submitted an affidavit of Jennifer Bush Hawkins, Esquire, in support of Plaintiff's request for reasonable attorneys' fees and costs. *See* ECF No. 6-1.

Ms. Loughran attests Defendant's monthly payroll records were reviewed. From this review Plaintiff discovered delinquent pension fund contributions totaling $9,353.78 owed by Defendant for the period of November 2012 through November 2013. ECF No. 6-2 ¶ 9. Exhibit 4 to Ms. Loughran's affidavit is a month-by-month breakdown of these shortages. *See* ECF No. 6-6 at 2 (NEBF Delinquency Report). The undersigned recommends the Court award Plaintiff $9,353.78 in unpaid pension fund contributions.

According to Ms. Loughran Defendant owes Plaintiff interest in the amount of $750.94. This interest is "calculated at a rate of 10% per annum, compounded monthly, on the outstanding contributions [.]" ECF No. 6-2 ¶ 10. This calculated interest is also reflected on the NEBF

Delinquency Report. *See* ECF No. 6-6 at 2. The undersigned recommends the Court award Plaintiff interest in the amount of $750.94.

Plaintiff seeks liquidated damages on the outstanding contributions in the amount of $1,870.76. The amount Plaintiff seeks equals 20% of the outstanding or unpaid contributions. This calculation is reflected on the NEBF Delinquency Report. *See* ECF No. 6-6 at 2. The undersigned recommends the Court award Plaintiff $1,870.76 as liquidated damages.

In addition to pre-judgment interest, Plaintiff seeks post-judgment interest in accordance with 28 U.S.C. § 1961(a).[6] The undersigned recommends the Court direct post-judgment interest, as calculated pursuant to 28 U.S.C. § 1961, continue to accrue until such time as the judgment is satisfied.

Defendant RECI has failed to submit payroll records for the month of January 2013 as reflected on the NEBF Delinquency Report. *See* ECF No. 6-6 at 2. The NEBF is unable to determine the amount of pension fund contributions owed. The undersigned recommends the Court direct Defendant RECI to submit to the NEBF the payroll records for January 2013 and to pay the full amount of pension fund contributions owed for January 2013.

Finally, Plaintiff incurred legal fees and costs totaling $939.90. This claimed expense is supported by the affidavit of Jennifer Bush Hawkins, Esquire. *See* ECF No. 6-1 ¶ 6. Considering Ms. Hawkins' affidavit, the twelve (12) factors used in determining a reasonable fee under *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974), and this Court's local guidelines regarding hourly rates, the undersigned finds the requested fees and costs, which total $939.90, are reasonable. Ms. Hawkins has been practicing law for more than

---

[6] "Interest shall be allowed on any money judgment in a civil case recovered in a district court . . . Such interest shall be calculated from the date of the entry of the judgment, at rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding[] the date of the judgment."

15 years.  Her hourly rate of $348 is within the range of this Court's local guidelines.  Although the hourly rate of the paralegal Owen Davis is $127, $12 more than the maximum for paralegals and law clerks under this Court's local guidelines, the rate billed is not excessive.  Moreover the paralegal dedicated more than triple the time on this case as the attorney at a much lower hourly rate.  The undersigned recommends the Court award Plaintiff $939.90 in attorneys' fees and costs.

## RECOMMENDATIONS

The undersigned summarizes the recommendations as follows:

    (a) The Court grant Plaintiff's Motion for Default Judgment (ECF No. 6);

    (b) The Court award Plaintiff $9,353.78 for delinquent pension fund contributions;

    (c) The Court award Plaintiff $750.94 in interest;

    (d) The Court award Plaintiff $1,870.76 as liquidated damages;

    (e) The Court award Plaintiff $939.90 in attorneys' fees and costs;

    (f) The Court direct post-judgment interest, calculated in accordance with 28 U.S.C. § 1961, continue to accrue on the judgment until satisfied by Defendant;

    (g) The Court order Defendant to submit to Plaintiff its payroll records for the month of January 2013 for the purpose of determining the amount of contributions due for that period, that the Court further order Defendant to pay the corresponding contributions, along with interest and liquidated damages, for the month of January 2013; and

    (h) The Court grant any other and further relief as it deems appropriate.

<u>May 29, 2014</u>                                                            _____/s/_____
                                                                                             WILLIAM CONNELLY
                                                                                   UNITED STATES MAGISTRATE JUDGE